Saul S. Streit, J.
This is an application to annul a determination of the State Rent Administrator, which increased the rents of petitioners and other tenants of an apartment house at 25 East 86th Street, New York City.
On January 15, 1957, the property had been purchased by the trustees of certain trusts, known as the “ Ottman trusts ”, pursuant to a contract dated November 12, 1956. The purchase price was $2,500,000. On May 1,1958, the trustees filed an application for an increase, claiming that they were entitled to a return of 6% on the $2,500,000 purchase price paid by them. The processing of said application was very slow and was not completed until February 27, 1959, 10 months later, at which time the Rent Commission, on the basis of a valuation of $2,500,000, increased the rents by $28,000. In the meantime, the trustees had placed the property on the market for $3,000,000. On December 23, 1958, almost eight months after the filing of the application for a rent increase, the trustees entered into a contract to sell the property to the present landlord for $3,000,000. The latter, when title was ultimately closed, on April 29, 1959, paid $3,000,000 for the property. On July 1, 1959 the present landlord filed an application for a further rent increase sufficient to produce a return of 6% on the $3,000,000 purchase price paid by it. The Rent Commission, by the determination sought to be reviewed, has granted the landlord’s application, using the figure of $3,000,000 as the base upon which the 6% return is computed.
There is a statutory provision which permits the Rent Commission to disregard the most recent sale, if an earlier sale, *744 during a period of two years prior to the application for a rent increase, had been adopted as the valuation of the property in a rent increase proceeding based on the failure to obtain a 6% return on the value of the property (Emergency Housing Bent Control Law, § 4, subd. 4, par. [a], as amd. by L. 1959, ch. 695). This statute does not apply here, because the earlier sale, for $2,500,000, took place more than two years before the filing of the present application for a rent increase.
Paragraph (a) of subdivision 4 (supra), therefore, made it mandatory for the Bent Commission to employ a valuation of $3,000,000 in the instant proceeding, if the sale to the present landlord was “ the result of a transaction at arm’s length, on normal financing terms at a readily ascertainable price and unaffected by special circumstances such as a forced sale, exchange of property, package deal, wash sale or sale to cooperative ”. Petitioners contend that certain conditions contained in the present landlord’s contract to purchase the property for $3,000,000 made the sale one affected by special circumstances within the meaning of the statutory language. Said contract provided that the closing of title was not to take place until a specified period after the seller, the Ottman trustees, had notified the purchaser that the Local Rent Administrator had granted the pending application of the trustees for rent increases. It further provided that if the application were denied or if the increase did not increase the rent roll to at least $392,000, the contract was to be deemed terminated. The buyer was also given a right to cancel if tenants filed protests to a rent increase granted by the Local Rent Administrator, which protests had not been denied by the date fixed for closing. It is these contractual provisions which, according to petitioners, constitute special circumstances affecting the amount of the price within the meaning of the statute.
In Matter of Realty Agency v. Weaver (7 N Y 2d 249) the Court of Appeals indicated that the special circumstances contemplated by the Legislature must be of the same character as the specific illustrations mentioned, under the doctrine of ejusdem generis, i.e., they must be circumstances where the resulting price is a distorted reflection of value. The court said (p. 254): “ That term [‘ special circumstances ’] is not defined by statute except as it is illustrated, namely, ‘ such as a forced sale, exchange of property, package deal, wash [i.e., fictitious] sale or sale to cooperative ’. Manifestly, the instant transaction comes within none of these illustrations, nor within the ambit of the term ‘ special circumstances ’, the scope of which may be measured under the doctrine of ejusdem generis. The illustra *745 tians set forth in the statute are of situations where the price yielded a distorted reflection of value. ’ ’ A sale to a co-operative, for example, is not a true criterion of value because “ There is but one possible buyer for the property, the proposed ‘ cooperative ’ corporation ” (Matter of Payson v. Caputa, 9 A D 2d 226, 232). However, a sale to a person whose purpose is to resell to a co-operative is not a special circumstance where there is no limitation upon the market for the property and the price paid is obtained upon the open market (Matter of Payson v. Caputa, supra, pp. 232-233). As the court pointed out in that case (pp. 232-233): “ While any bidder is inevitably influenced in fixing the amount of his bid by the variety of prospects for profit which he may contemplate, he nevertheless will pay no more than, as in his judgment, he must to obtain the property ”. In Matter of Ackerman v. Weaver (6 N Y 2d 283) the Court of Appeals held that the presence of an internal arrangement between the lessor and lessee, viz., the existence of a cancelable lease, did not “ specially circumstance ” the sale.
In the case at bar, there is no evidence that the price of $3,000,000 represented a distorted, rather than the true, value of the property. Had the present landlord waited to contract for the purchase of the property until after the application of the Ottman trustees had been decided by the Local Rent Administrator, two months later, there could be no question but that the use of the $3,000,000 purchase price as the valuation base in this proceeding would be mandatory and that said price could not be treated as representing a distorted valuation. The court is unable to perceive why the situation should be any different merely because the present owner, in a contract made while the application was pending, made his agreement to pay $3,000,000 conditional upon the granting of the prior application to the extent of bringing the rent roll up to $392,000. If a price of $3,000,000 in an unconditional contract, made after the granting of the Ottman application, would represent the true value of the property for the purpose of a proceeding of this character, then the same price conditioned upon the granting of the Ottman application, likewise represents the proper value for the purposes of this proceeding.
Petitioners refer to a dictum in Matter of Bajart Management v. Weaver (8 A D 2d 56, 60) that “ a sale for the sole purpose of an application for rent adjustments ” might justify the Administrator’s rejection of the sales price. This statement was made prior to the handing down of the opinion of the Court of Appeals in Matter of Realty Agency v. Weaver (supra) in which the court limited the “special circumstances” to those coming *746 within the doctrine of “ ejusdem generis ”. Furthermore, and more important, there is no basis here for a finding that the $3,000,000 sale was made “ for the sole purpose of an application for rent adjustments ” and the Rent Administrator has found that “ the record does not indicate that the sole purpose of the sale was to enable the purchaser to make a section 33-5 application”. That the parties knew that the purchaser intended to make such an application is not enough to make the sale one for the sole purpose of enabling the purchaser to so apply.
The court is not unmindful of the unfortunate plight of petitioners and the other tenants, who are now faced with a second increase within a short period, predicated upon a price which the present landlord was willing to pay, because it could legally make it the basis for a new increase. The court cannot but sympathize with the tenants. The vice in the situation is, however, not the fact that the landlord’s contract to purchase was conditioned upon the granting of the prior application for an increase, but rather the present statutes, which (1) make any price which a bona fide purchaser wishQS to pay the mandatory base for computing the 6% return to which the landlord is entitled, and (2) permit applications for rent increases based on each successive sales price, provided that only two years has elapsed since the price on a prior sale was used as the valuation of the property in a proceeding for an increase of rents. The inevitable effect of these provisions will be to emasculate the rent laws and leave only illusory rent controls. For the reasons indicated, the motion is denied.